IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANE DOE and JOHN DOE,** as parents and natural guardians of **JANE ROE**, a minor, | : CIVIL ACTION NO. 1:24-CV-186 <br> : <br> : (Judge Conner) |
| Plaintiffs | : |
| v. | : |
| **RED LION AREA SCHOOL DISTRICT**, *et al.*, | : |
| Defendants | : |

## **MEMORANDUM**

Plaintiffs Jane Roe, a minor, and her mother and father, Jane and John Doe, assert constitutional, statutory, and state common-law claims against defendants Red Lion Area School District and Michael Langan, principal of Clearview Elementary School. Defendants move to dismiss Roe's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). We will grant the motion in part and deny it in part.

**I.      Factual Background & Procedural History**

Roe attended school within the Red Lion Area School District when she was five years old. (See Doc. 16 ¶¶ 4, 41). This case arises from Roe's allegation that she was twice physically and sexually assaulted by a fellow minor student, who is male, while riding the school bus. (See id. ¶¶ 1, 17-20, 27). Plaintiffs assert District staff—including Principal Langan, a school psychologist, and the bus driver—knew Roe was in danger of being assaulted and failed to prevent it. (See id. ¶¶ 21-25, 29, 30-37, 111). The following events are derived from plaintiffs' amended complaint.

Plaintiffs allege that, on October 16, 2023, Roe told her mother she was sexually assaulted by a male student on the bus. (See id. ¶ 17). The next day, Roe's mother called Clearview Elementary School and reported the incident to Principal Langan. (See id. ¶ 24). The same male student then attacked Roe on the same bus in January 2024, causing bruising and leaving handprints on Roe's body. (See id. ¶¶ 1, 27). Roe's parents removed her from the District following the second assault. (See id. ¶ 41).

According to the amended complaint, defendants knew of the male student's propensity to engage in deviant behavior, including sexual assault. (See id. ¶¶ 18-25). In fact, on October 17, 2023—after the first assault of Roe, but before the second—Principal Langan called the mother of another female student to inform her that the perpetrator had assaulted her daughter multiple times; this time he had kissed her, touched her inappropriately, and looked down her shirt. (See id. ¶ 21). Principal Langan claimed to have learned about the assaults from school bus camera footage, (see id. ¶ 21); however, the bus company denied that the camera was functioning at the relevant times, (see id. ¶ 22).

Plaintiffs allege defendants did nothing to prevent the January 2024 assault, even after receiving the foregoing reports. (See id. ¶¶ 29, 32, 111). More specifically, defendants did not expel or suspend the assailant, physically separate him from Roe, or staff the bus with monitors. (See id.) Principal Langan also allegedly failed to report the attacks despite being a mandated reporter under Pennsylvania law. (See id. ¶¶ 33-35).

Plaintiffs initiated this action on February 1, 2024.  They advance two claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, against the District for deliberate indifference to, and for placing Roe at a heightened risk of, sexual assault and harassment, respectively (see Doc. 16 ¶¶ 12-47 (Count I), ¶¶ 48-61 (Count II)).  In addition, plaintiffs bring constitutional claims under 42 U.S.C. § 1983 against the District and Principal Langan in his individual capacity, (see Doc. 16 ¶¶ 7, 98), based upon the Fourteenth Amendment's Due Process and Equal Protection Clauses, (see id. ¶¶ 62-82 (Count III), ¶¶ 83-98 (Count IV)).  Plaintiffs also assert a negligence claim against both defendants under Pennsylvania common law.  (See id. ¶¶ 99-128 (Count V)).  Defendants now move to dismiss plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The motion is fully briefed and ripe for disposition.

## II.   Legal Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  See FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III.  Discussion

Defendants seek dismissal of each count of the amended complaint. First, they aver the amended complaint does not plausibly state that the District was deliberately indifferent to severe or pervasive harassment under Title IX (Counts I and II). (See Doc. 19 at 4-7). They then contend we should dismiss the constitutional claims (Counts III and IV) under Monell v. Department of Social Services, 436 U.S. 658 (1978), or, alternatively, because the claims are not supported

by sufficient factual material. (See id. at 9-13). Finally, defendants argue they are immune from negligence liability (Count V) pursuant to Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 PA. CONS. STAT. § 8541, *et seq.* We address each argument *seriatim*.

### A. Title IX

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In addition to granting substantive rights, Title IX implies a private right of action to enforce them. See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005). To state a Title IX claim against a school district for student-on-student harassment, a plaintiff must plausibly demonstrate, among other elements, (1) "severe or pervasive" harassment by a student; and (2) "deliberate indifference" on the part of the district. Davis *ex rel.* LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999). Defendants here argue the amended complaint does not contain sufficient factual matter to plausibly state either element.

#### i. *Severe or Pervasive Harassment*

Actionable conduct under Title IX must be so severe or pervasive "that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Id. at 650; see also Doe *ex rel.* Doe v. Boyertown Area Sch. Dist., 897 F.3d 518, 533 n.99 (3d Cir. 2018) (citations omitted) (directing courts to analyze Title IX claims under Title VII's "severe or pervasive" standard for

workplace sexual harassment). A single extreme isolated incident can meet this burden. See Castleberry v. STI Grp., 863 F.3d 259, 264-66 (3d Cir. 2017). However, the conduct must be both subjectively offensive and objectively offensive to a reasonable person. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1482-83 (3d Cir. 1990), superseded in part by statute on other grounds as recognized in Moody v. Atlantic City Bd. of Educ., 870 F.3d 206, 214 (3d Cir. 2017). When assessing conduct, we must consider the "overall scenario." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001). Relevant considerations include physical abuse, threatening behavior, and continued exposure to former harassers. Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 717 (3d Cir. 1997).

Plaintiffs have pleaded severe or pervasive harassment. To begin, plaintiffs allege the same male student assaulted Roe twice within months. (See Doc. 16 ¶¶ 17, 27). In the interim, she rode the bus daily with her alleged abuser unsupervised. (See id. ¶¶ 29-32). The complaint also avers facts—namely, that the abuser inappropriately touched another five-year-old in private places and attacked Roe so violently he left bruises and handprints, (see id. ¶¶ 21, 27)—plausibly demonstrating that the alleged conduct against Roe was so objectively offensive that it created a hostile educational environment. The severe or pervasive element is satisfied.

        *ii.*    *Deliberate Indifference*

Deliberate indifference requires a plausible showing that the recipient of federal funds had actual knowledge of severe or pervasive harassment. See Davis, 526 U.S. at 629. Our court of appeals has held that a school district can be held

liable only if "an appropriate person"—that is, someone "with the power to take action to correct the discrimination"—has prior notice of the relevant conduct. Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 360 (3d Cir. 2005). A plaintiff must also demonstrate that those with notice made "'an official decision . . . not to remedy the violation.'" Davis, 526 U.S. at 642 (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998)). In other words, a school district's official response must be "clearly unreasonable in light of the known circumstances." See id. at 648.

According to plaintiffs, Principal Langan knew of the male student's alleged propensity for assaulting female students, including Roe on one previous occasion, by the time the second assault occurred in January 2024. (See Doc. 16 ¶¶ 17, 21, 27). The amended complaint also identifies deficiencies in defendants' alleged response, specifically that they did not expel or suspend the assailant, physically separate him from Roe, or staff the bus with monitors. (See id. ¶¶ 29, 32, 111). That is sufficient at this early procedural juncture, and we find that the amended complaint states plausible Title IX claims against the District.[1]

---

[1] We will, however, grant defendants' motion to dismiss the claim for emotional distress damages under Title IX. In Cummings v. Premier Kehab Keller, P.L.L.C., 596 U.S. 212 (2022), the Supreme Court squarely held that there is no private right of action for emotional distress damages under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., or the Patient Protection and Affordable Care Act, 42 U.S.C. § 18001 et seq. See Cummings, 596 U.S. at 217, 230. Despite its narrow formal holding, the Cummings Court aimed its discussion and analysis towards all four "Spending Clause antidiscrimination statutes[,]" including Title IX. See id. at 218-19, 230. Although our court of appeals has not addressed this question, we are confident Cummings bars emotional distress damages under Title IX. See Reed v. Mount Carmel Area Sch. Dist., 697 F. Supp. 3d 286, 292 & n.57 (M.D. Pa. 2023) (citations omitted) (reaching the same conclusion and collecting post-Cummings opinions in agreement). We will dismiss plaintiffs' Title IX claim for emotional

### B.      Constitutional Claims Pursuant to 42 U.S.C. § 1983

Plaintiffs next advance claims under Section 1983 of Title 42 of the United States Code. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To plead Section 1983 liability, a plaintiff must plausibly demonstrate deprivation of a "'right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law.'" Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). Defendants aver plaintiffs have not done this. They first argue plaintiffs' constitutional claims fail under Monell. (See Doc. 19 at 7-9). They then argue the Due Process and Equal Protection claims are not supported by sufficient factual material. (See id. at 9-13).

### i.      *Monell* Liability

To state a claim under Monell, a plaintiff need only allege facts showing that the relevant policy—here, turning a blind eye to reports of assault by female students—proximately caused injury. See Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (citing Kneipp, 95 F.3d at 1213). A plaintiff may meet this burden by alleging facts plausibly demonstrating an "affirmative link" between

---

distress damages with prejudice because any attempt to state such a claim would be futile. See Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000).

the policy and the purported violation. See id. (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990)); see also Bielevicz, 915 F.2d at 851 (clarifying that plaintiffs need not allege injuries were direct result of formal policy). Here, the amended complaint states that the District had a policy of ignoring female victims. (See Doc. 16 ¶¶ 68, 80-81). In addition, the January 2024 assault occurred after Principal Langan allegedly received reports of at least two previous incidents and failed to take appropriate action. (See id. ¶¶ 17-21, 29, 32, 111). Plaintiffs state a plausible Monell claim.

        *ii.  Due Process*

"[T]he Fourteenth Amendment's Due Process Clause does not generally impose an affirmative duty on the state to protect individuals from harm caused by private citizens." Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013) (*en banc*). There are two exceptions to this general rule: the special relationship exception and the state-created danger exception. See id. at 167. Plaintiffs here rely solely on the state-created danger doctrine. (See Doc. 20 at 19-21). To prevail, they must allege facts plausibly demonstrating, among other elements, that "'a state actor *affirmatively* used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.'" See Morrow, 719 F.3d at 177 (emphasis added) (quoting Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006)).

Our court of appeals has recognized, however, that allegations of inaction or failure to respond meet that standard where a school district placed a plaintiff in danger and then did nothing to protect him from a known or obvious hazard. See

9

id. at 177-78 (quoting D.R. *ex rel.* L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1374 (3d Cir. 1992) (*en banc*)).  For example, the court in J.R. *ex rel.* Mr. R.R. v. Greater Latrobe School District, 688 F. Supp. 3d 243 (W.D. Pa. 2023), rejected a motion to dismiss a substantive due process claim against a school district for peer-on-peer sexual harassment that took place during unsupervised high school wrestling practices.  See J.R., 688 F. Supp. 3d at 256.  The court concluded that continuing a policy of requiring that wrestlers attend all practices, despite knowing that some of the practices were unsupervised, was affirmative action on the part of the district.  See id. at 256-57.  Plaintiffs here allege that Principal Langan knew about two previous assaults of Roe, but still allowed the same perpetrator to ride the same bus without a monitor.  (See Doc. 16 ¶¶ 17-21, 29, 32, 111).  The logical inference from those allegations is that placing Roe on the bus with her assailant made her less safe than providing no bussing system at all, and that is sufficient to state a due process claim.

Moreover, we are unconvinced by defendants' analogy to Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013) (*en banc*), because that case is distinguishable.  The plaintiffs in Morrow alleged that the defendant school district violated the Due Process Clause by allowing the plaintiffs' known harasser to ride the plaintiffs' bus route despite a preexisting no-contact order.  See Morrow, 719 F.3d 178-79.  Our court of appeals concluded that because the harasser in Morrow was not regularly assigned to the plaintiffs' bus route, the school district could not have foreseen the harasser riding that route nor could they have acted affirmatively to prevent it.  See id.  Not so here, where plaintiffs allege that the assailant continued to ride his

10

regular bus route with his alleged victims, including Roe, daily. (See Doc. 16 ¶¶ 17-21-25, 29, 30-37, 111). Requiring Roe to ride the bus with her abuser unsupervised, under the circumstances described in the amended complaint, placed Roe in obvious jeopardy. Assuming at this procedural juncture that defendants failed to protect her from foreseeable harm, defendants violated Roe's due process rights. See D.R., 972 F.2d at 1374. Morrow does not foreclose plaintiffs' due process claim.

### iii.   Equal Protection

To succeed on an equal protection claim, a plaintiff must plausibly plead intentional discrimination. Hassan v. City of New York, 804 F.3d 277, 294 (3d Cir. 2015) (citing Washington v. Davis, 426 U.S. 229, 241 (1976); Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 276 (1979)). Our court of appeals has not yet construed this requirement in the context of student-on-student harassment claims against a school district. See F.G. *ex rel.* Swisher v. Jersey Shore Area Sch. Dist., No. 4:22-CV-1120, 2023 WL 6543097, at *4 (M.D. Pa. Oct. 6, 2023) (citing Dickerson v. Wallkill Valley Reg'l High Sch. Bd. of Educ., No. 19-CV-8450, 2020 WL 2847757, at *4 (D.N.J. June 1, 2020); George v. Bd. of Educ. of the Twp. of Millburn, 34 F. Supp. 3d 442, 460-61 (D.N.J. 2014)). However, lower courts within our circuit have followed the Second Circuit's reasoning in Grant *ex rel.* Grant v. Wallingford Board of Education, 195 F.3d 134 (2d Cir. 1999), which recognizes a stand-alone "disparate impact" theory of equal protection liability. See, e.g., F.G., 2023 WL 6543097, at *4 (citations omitted).

In Grant, the plaintiff kindergartener advanced equal protection claims based upon the defendant school district's deliberate indifference to race-based

11

harassment from other students and their parents. See Grant, 195 F.3d at 138. The Second Circuit affirmed the district court's entry of summary judgment in favor of the district. See id. It held that the "discriminatory intent" requirement of an equal protection claim may be satisfied by showing that a school district was deliberately indifferent to a third party's intentionally discriminatory conduct. See id. at 140 (citations omitted). Thus, to succeed, a plaintiff must demonstrate: (1) harassment on account of a protected characteristic; (2) that school officials knew about the harassment; and (3) that the school district's response was "'so clearly unreasonable in light of the known circumstances' as to give rise to a reasonable inference that the [district itself] intended for the harassment to occur." DiStiso v. Cook, 691 F.3d 226, 241 (2d Cir. 2012) (quoting Grant, 195 F.3d at 141). The focus of the inquiry is whether the district itself possessed a "'racially discriminatory purpose.'" See id. (quoting Grant, 195 F.3d at 141). We find Grant and its progeny persuasive and will apply its analytical framework to plaintiffs' claims *sub judice*.

As previously discussed, plaintiffs plausibly pleaded deliberate indifference to gender-based discrimination by alleging that the perpetrator only attacked female students and that the District had a policy of covering up male-on-female harassment and abuse. Reacting to those allegations by relying on a malfunctioning camera is clearly unreasonable in light of known circumstances. See DiStiso, 691 F.3d at 241 (citing Grant, 195 F.3d at 141). And plaintiffs need not, as defendants suggest, (see Doc. 19 at 12-13), identify a comparator—that is, a male student who was similarly situated to but treated more favorably than Roe— because under Grant's disparate impact theory of equal protection liability

12

allegations of deliberate indifference are themselves sufficient to plead intentional discrimination, and a comparator is not required. See F.G., 2023 WL 6543097, at *4 (footnotes and citations omitted) (noting that successful pleading under disparate impact theory obviates need to identify comparators). We will deny defendants' motion to dismiss the equal protection claim.

**C.    Negligence**

Lastly, defendants argue the PSTCA immunizes them from negligence liability. (See Doc. 19 at 13-15). The PSTCA shields local agencies, including school districts and their employees, from "any damages [claim] on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT. § 8541. The Act also contains several exceptions. See id. § 8542(b). The parties here dispute whether the sexual abuse exception plausibly applies. See id. § 8542(b)(9).[2]

Adopted in 2019, Section 8542(b)(9) waives PSTCA immunity for negligent conduct involving sexual abuse. See id. § 8542(b)(9). Though adopted with the broad goal of "waiv[ing] sovereign immunity for public entities guilty of covering up childhood sexual abuse[,]" see PA. H.R. LEGS. JOURNAL, 203RD ASSY., REG. SESS., at 510 (Apr. 10, 2019), Section 8542(b)(9)'s exception is a narrow one that applies

---

[2] We examine the applicability of the PSTCA's exceptions to the District and to Principal Langan together because "[a]n individual employee's immunity from negligence claims is coextensive with the agency's immunity and is subject to the same exceptions." Doe ex rel. Brown v. Harrisburg Sch. Dist., No. 1:19-CV-1027, 2020 WL 4584372, at *6 (M.D. Pa. Aug. 10, 2020) (Conner, J.) (citing 42 PA. CONS. STAT. § 8545).

only to underlying conduct which "constitutes an offense" under nine enumerated criminal statutes, see 42 PA. CONS. STAT. § 8542(b)(9).[3] Of the six statutes plausibly implicated by the allegations in plaintiffs' amended complaint,[4] all but one—institutional sexual assault—require a showing of "penetration, however slight" under Pennsylvania law.  See 18 PA. CONS. STAT. § 3121 (rape); id. § 3122.1 (statutory sexual assault); id. § 3123 (involuntary deviate sexual intercourse); id. § 3124.1 (sexual assault); id. § 3125 (aggravated indecent assault); id. § 3124.2 (institutional sexual assault).  Thus, we will begin our analysis with institutional sexual assault before proceeding to the other pertinent offenses.

Institutional sexual assault occurs when "a person who is a volunteer or an employee of a school or any other person who has direct contact with a student at a school" engages in sexual intercourse, deviant sexual intercourse, or indecent sexual contact with a student.  See id. § 3124.2(a.2)(1).  The question in the matter *sub judice* is whether Section 3124.2(a.2) proscribes student-on-student sexual assault, an issue Chief Judge Brann squarely addressed in Reed v. Mount Carmel Area School District, 697 F. Supp. 3d 286 (M.D. Pa. 2023).  There, a high school student advanced state-law negligence claims based upon extreme hazing by the

---

[3] Section 8542(b)(9) incorporates the criminal offenses by cross-referencing 42 PA. CONS. STAT. § 5551(7), which in turn lists the nine criminal statutes.  The statutes are: 18 PA. CONS. STAT. § 3311(b) (sex trafficking); id. § 3012 (sexual servitude); id. § 3121 (rape); id. § 3122.1 (statutory sexual assault); id. § 3123 (involuntary deviate sexual intercourse); id. § 3124.1 (sexual assault); id. § 3124.2 (institutional sexual assault); id. § 3125 (aggravated indecent assault); and id. § 4302 (incest).

[4] The three remaining offenses—sex trafficking, sexual servitude, and incest—are not implicated by the amended complaint.

student captain of the football team. Reed, 697 F. Supp. 3d at 289-90. The court concluded the team captain was not a member of the class of persons capable of perpetrating institutional sexual assault: volunteers, employees, or "any other person[s] who had direct contact" with students. See id. at 294-96. The court first applied *ejusdem generis*, a cannon of statutory interpretation which teaches that where a general word follows a list of two or more specific terms, the general word usually only refers to the kind or class of things specifically enumerated. See id. at 295. In that view, the phrase "any other person" in Section 3124.2(a.2) must refer to a class of persons who exert similar "care, supervision, guidance or control" over students as volunteers and employees do. See id.[5] The statutes' structure—which specifically excepted student volunteers and employees from the definition of potential defendants—bolstered the court's conclusion. See id. at 295-96 (citing 18 PA. CONS. STAT. § 3124.2(a.2)(2)(ii), (iv)). Students, including student leaders, cannot commit institutional sexual assault without exercising "care, supervision, guidance or control" the way teachers and volunteers do. See id.

We find Reed instructive and, applying its framework, we find that the allegations before us do not support a plausible inference that the minor assailant exerted a level of control over Roe or any other student sufficient to trigger the institutional sexual assault exception. Consequently, plaintiffs must look to another exception, each of which requires a plausible showing of "penetration, however

---

[5] The statute defines "direct contact" as "care, supervision, guidance or control." 18 PA. CONS. STAT. § 3124.2(a.2)(2)(i).

15

slight" of the complainant's mouth, genitals, or anus.  See 18 PA. CONS. STAT. § 3121 (rape); id. § 3122.1 (statutory sexual assault); id. § 3123 (involuntary deviate sexual intercourse); id. § 3124.1 (sexual assault); id. § 3125 (aggravated indecent assault).  In interpreting that requirement, we have consistently held that the PSTCA's sexual assault exception applies to claims of forced penetrative contact between students.  See Doe v. Williamsport Area Sch. Dist., 699 F. Supp. 3d 306, 327-28 (M.D. Pa. 2023) (placing assailant's penis on plaintiff's face); J.R., 688 F. Supp. 3d at 265 (anal penetration with a stick); L.S. v. Hanover Area Sch. Dist., No. 3:22-CV-234, 2024 WL 2393038, at *12-13 (M.D. Pa. May 23, 2024) (shoving woodchips in plaintiff's rectum); Brown, 2020 WL 4584372, at *5-6 (rape).  The amended complaint in this matter, by contrast, includes only general allegations of touching and bruising.  (See Doc. 16 ¶¶ 1, 27).  Those allegations, though serious and compelling, do not provide the factual specificity necessary to support the plausible inference that Roe's assailant engaged in "penetration, however slight," under Pennsylvania law.  No exception to PSTCA immunity plausibly applies under the circumstances alleged.  That said, we will grant defendants' motion to dismiss Count V without prejudice because curative amendment stating a claim outside the PSTCA's ambit is possible.

## IV. Conclusion

We will grant defendants' motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) in part and deny it in part. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   January 2, 2025